IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH WEINSTEIN, Executrix of the :
Estate of Irwin Weinstein, deceased : CIVIL ACTION No.: 12-154
:
:
:
v. :
:
:
KATHLEEN SEBELIUS, SECRETARY :
OF THE UNITED STATES :
DEPARTMENT OF HEALTH AND :
HUMAN SERVICES :

## ORDER

AND NOW, this            day of                        , 2012, upon

consideration of plaintiff's Motion to Reverse the Medicare Appeals Council Decision

Dated November 25, 2011 and for Summary Judgment in favor of plaintiff, and any

response thereto, it is hereby ORDERED that plaintiff's motion is GRANTED and the

Medicare Appeals Council's November 25, 2011 decision is REVERSED.   Summary

Judgment is granted in favor of plaintiff.   Medicare shall reimburse plaintiff the

difference between $58,393.57 and $2,922.34 less procurement costs, plus interest on this

amount from the date Medicare received $58,393.57 from plaintiff's counsel, plus costs

of suit.

BY THE COURT:

_____
HONORABLE PAUL S. DIAMOND
*United States District Court Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH WEINSTEIN , Executrix of the    :
Estate of Irwin Weinstein, deceased    :    CIVIL ACTION No.: 12-154
    :
    :
    :
          v.    :
    :
KATHLEEN SEBELIUS, SECRETARY    :
OF THE UNITED STATES    :
DEPARTMENT OF HEALTH AND    :
HUMAN SERVICES    :

**PLAINTIFF'S MOTION FOR REVERSAL OF MEDICARE
APPEALS COUNCIL DETERMINATION OF AMOUNT OF MEDICARE
REIMBURSEMENT AND FOR SUMMARY JUDGMENT**

      Plaintiff respectfully presents the instant motion requesting this Court to reverse

the decision of the Medicare Appeals Council ("MAC") which affirmed the honorable

Administrative Law Judge ("ALJ") and for summary judgment in her favor.  Plaintiff

requests that this Court find that Medicare, in the pursuit of a subrogation claim arising

from plaintiff's settlement of a medical malpractice lawsuit, failed to properly apply its

own regulations and guidelines and also failed to meet its burden of proof to establish

which Medicare-paid medical care and treatments were necessitated by professional

malpractice.

      Plaintiff respectfully submits that the MAC and ALJ applied the incorrect legal

standard in rendering their respective decisions by, first, failing to properly apply

Medicare's own guidelines in this case and, second, in imposing upon the estate of Irwin

Weinstein the burden of proof in connection with Medicare's subrogation claim, i.e. the

burden of proving which Medicare-paid medical expenses were incurred as a result of the

underlying malpractice.   Additionally, there is not substantial evidence to support the findings of the MAC or the ALJ. The opinion of the MAC is located in the Administrative Record ("AR") at 3-22.   The opinion of the ALJ is located in the AR at 94-102.  In support hereof, plaintiff avers as follows:

1.      The plaintiff, Edith Weinstein, is the duly appointed personal representative of the estate of Irwin Weinstein.

2.      The defendant, Kathleen Sebelius, is Secretary of the United States Department of Health and Human Services.

3.      This Court possesses subject matter jurisdiction pursuant to 42 U.S.C.A. §405 (g) and 42 U.S.C.A. §1395 ff (b) (1) (A).

4.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 42 U.S.C. §1395 ff (b).

5.      Edith Weinstein filed a lawsuit captioned *Edith Weinstein, Executrix of the Estate of Irwin Weinstein, deceased v. Albert Einstein Medical Center, et al.,* C.C.P. Philadelphia County, April Term, 2007, No. 0623 on April 11, 2007, arising from the treatment of Irwin Weinstein at Elkins Park Hospital/Einstein at Elkins Park and Albert Einstein Medical Center on April 10, 2005. Irwin Weinstein died on September 4, 2005.

6.      In said lawsuit, Edith Weinstein claimed that Irwin Weinstein should have been administered thrombolytic therapy ("TPA") to treat his cerebral stroke on April

10, 2005 within three hours of the onset of his symptoms. The defense in the underlying medical malpractice case claimed, <u>inter alia</u>, that the decision against administering TPA on April 10, 2005 was based on sound medical judgment.  The defendants claimed that Irwin's history of ongoing hemorrhoid bleeding, his elevated blood pressure and his clinical improvement on April 10, 2005 after his initial presentation supported the decision not to administer TPA, a medication used to lyse clots and restore cerebral blood flow.  The defendants argued further that a CT scan study of Irwin's brain on April 16, 2005, six days later, demonstrated that Irwin suffered another newly-onset cerebral hemorrhage, which was the actual and real reason for Irwin's prolonged hospitalization and death.

7.    The aforementioned lawsuit, *Weinstein v. AEMC*, was ultimately settled amicably by the parties.

8.    Edith Weinstein filed a Motion for Court Determination of Applicable Medicare Lien on September 26, 2008 in the trial court, which Defendants joined on October 2, 2008. Said Motion set forth both parties' arguments concerning the alleged medical malpractice and requested a Court Order limiting the time frame and amount of the Medicare recovery to $2,922.34, subject to a pro-rata deduction for procurement costs, which reflects the amount paid by Medicare from April 10, 2005 through April 16, 2005, the date of the subsequent head CT scan that demonstrated the new acute bleed.

9.    The trial court dismissed Plaintiff's Motion for Court Determination of Applicable Medicare Lien noting that Plaintiff was free to present the lien issue in its Petition

3

for Court Approval of Settlement and Distribution in Wrongful Death and Survival Action.

10.     On October 30, 2008, Edith Weinstein filed a Petition for Court Approval of Settlement and Distribution in Wrongful Death and Survival Action. Attached to said Petition was Plaintiff's Motion for Court Determination of Applicable Medicare Lien and a limitation of the time frame and amount of the Medicare recovery to $2,922.34, subject to a pro-rata deduction for procurement costs.

11.     The court in the aforementioned lawsuit, _Weinstein v. AEMC_, issued an order on November 20, 2008 approving the proposed settlement and distribution, including the proposed limitation on the time frame and amount of the Medicare recovery to $2,922.34, subject to a pro-rata reduction for procurement costs.

12.     Plaintiff's Motion for Court Determination of Applicable Medicare Lien, Defendant's Motion joining Plaintiff's Motion for Court Determination of Applicable Medicare Lien and Plaintiff's Petition for Court Approval of Settlement and Distribution in Wrongful Death and Survival Action were all served upon Medicare TPL, c/o JP Morgan Chase, 9000 Haggerty Road, MI1-8845, Belleville, Michigan. Without holding a fact-finding hearing and in violation of the due process rights of Edith Weinstein, the Medicare Appeals Council in its November 25, 2011 decision determined that Medicare TPL, c/o JP Morgan Chase, 9000 Haggerty Road, MI1-8845, Belleville, Michigan is not the address for the MSPRC contractor and that said address is the address for an ATM only.  It is unclear to plaintiff what the Medicare Appeals Council means by

the terminology "ATM".   However, both Plaintiff and Defendant in the underlying medical malpractice lawsuit served their motion and response to that address, with Plaintiff her motion by FedEx delivery.  Plaintiff received a letter from MSPRC - 8 c/o JP Morgan Chase dated December 4, 2008 acknowledging receipt of the correspondence sent.  Therefore, for whatever purpose Medicare and MSPRC used that Belleville, Michigan address, it sufficed for delivery and response concerning legal issues.  The Medicare Appeals Council failed to acknowledge the fact that Medicare had, in fact, received and accepted without protest correspondence and legal motions at the address, which the Medicare Appeals Council appears to claim to be incorrect.  Moreover, as explained further herein and the accompanying memorandum of law, Medicare is bound by "on the merits" decisions of state courts whether or not Medicare is served with the underlying state court motions and whether or not Medicare is a party to or participates in the state court action.

13.   Following the November 20, 2008 Court Order that determined the amount Edith Weinstein owed to Medicare the Medicare Secondary Payer Recovery Contractor ("MSPRC") issued a demand letter dated March 17, 2009 requesting payment of $90,230.51, less procurement costs, resulting in a net amount claimed of $58,393.57.  This amount reflected Medicare's demand for reimbursement for all of the medical expenses Medicare paid starting on April 10, 2005 up until Mr. Weinstein's death on September 4, 2005, less procurement costs.

14.     Through counsel, Edith Weinstein notified Medicare's contractor of her objection to the amount of Medicare's claim, explaining in detail the basis for the objection. The essence of the objection is that, first, Medicare is bound by the "on the merits" decision of the state court set forth in the November 20, 2008 Court Order.  Additionally, Medicare is not entitled to be reimbursed for payment it made for treatment that the beneficiary, Irwin Weinstein, received that is unrelated to the medical negligence.  Stated differently, Medicare is entitled to be reimbursed only for those medical expense payments it made for treatment that Medicare proves was necessitated by the claimed medical negligence. Edith Weinstein paid the full amount of Medicare's claim under protest, reserving her rights.

15.     Edith Weinstein pursued all required administrative procedures and appeals before filing this action.

16.     By letter dated November 25, 2011, the Department of Health and Human Services, Medicare Appeals Council notified plaintiff of its decision upholding the Administrative Law Judge's decision that had affirmed Medicare's determination that plaintiff owed Medicare the entire amount Medicare paid on behalf of Irwin Weinstein between April 10, 2005 and September 4, 2005, less procurement costs.

17.     Edith Weinstein files the instant Motion for Summary Judgment seeking partial reimbursement of the overpayment to Medicare, plus interest and costs, because the state court decision approving the amount of the appropriate Medicare lien

was on the merits and controlling in accordance with the Medicare Secondary Payer Manual.  The state court considered each aspect of the Weinstein Estate's petition seeking court approval of the underlying settlement and made an "on the merits" decision concerning allocations of the recovery. No part of the state court decision was entered as a result of any default or procedural technicality.  By definition, the November 20, 2008 Order was on the merits: The state court was free to reject, accept or alter any aspect of the Weinstein's estate's petition and request for a designated apportionment of medical expenses necessitated by the malpractice distinguished from the other elements of recovery.  In its Secondary Payer Manual, Chapter 7 at 50.4.4 (2008), Medicare has specifically consented to state courts or other adjudicators making such allocations. Medicare has agreed to be bound by those on the merits determinations. As such, Medicare has agreed to submit to the jurisdiction of such courts and adjudicators.

18.    Edith Weinstein files the instant Motion for Summary Judgment seeking partial reimbursement of the amount paid to Medicare, additionally, because the medical services provided to Irwin Weinstein after April 16, 2005, the date of the subsequent head CT scan that demonstrated the new acute bleed, were not proven by Medicare to be the result of the claimed professional negligence of healthcare providers. Medicare is <u>not</u> entitled to reimbursement of the medical care and hospitalization costs that Irwin Weinstein would have incurred for diagnosis and treatment of his stroke irrespective of the underlying alleged negligence of the failure to provide thrombolytic therapy.    Nor is Medicare entitled to

7

reimbursement for medical payments it made for treatment that would have been necessitated by Irwin Weinstein's second cerebral hemorrhage identified on April 16, 2005. Medicare failed to meet its burden of demonstrating what Medicare payments were made by reason of the failure to administer TPA versus what payments were made because of the initial stroke and the April 16, 2005 cerebral bleed. Medicare has the ultimate burden of proving what medical services and payments were necessitated because of the malpractice. Urso v. Thompson, 309 F.Supp. 2d 253, 259-260 (D. Conn. 2004); U.S. v. Weinberg, 2002 Westlaw 32356399 (E.D. Pa. July 1, 2002). As such, given the facts of the case, Medicare is not entitled to be reimbursed the amount that Medicare paid after April 16, 2005. Nor is Medicare entitled to be reimbursed for payments it made for treatment necessitated by the initial stroke or for Mr. Weinstein's pre-existing conditions. Medicare's decision to require full reimbursement of the entire amount Medicare paid for treatment after the initial stroke and for the amount Medicare paid for treatment after April 16, 2005 is plainly erroneous and was based upon the application of an improper legal standard. Medicare, the Honorable Administration Law Judge and the Medicare Appeals Council applied an erroneous legal standard in determining the case. Additionally, the Medicare Appeals Council ("MAC") made a finding of fact concerning the Medicare address, without affording notice or hearing to Edith Weinstein. The MAC reached an unsupportable conclusion based upon its unsupported finding. Finally, plaintiff requested, but was erroneously denied the request that Medicare produce two designated witnesses at the ALJ hearing.

19.     Aside from the plain import of Medicare's consent to state court decisions and jurisdiction, which the Administrative Law Judge and MAC failed to recognize and apply, the Weinstein estate sought testimony from Medicare at the ALJ hearing concerning its history of accepting and recognizing State Court Orders making such allocations.  The Administrative Law Judge incorrectly refused to honor the Weinstein estate's request for such testimony at the ALJ hearing, which decision was erroneously affirmed by the MAC.

20.     Additionally, the ALJ and the MAC erroneously failed to require Medicare to produce a designee to identify and provide documentation at the hearing concerning the breakdown and amount paid by Medicare for all medical treatment/services received by Irwin Weinstein from April 10, 2005 the date of his stroke, through September 4, 2005 the date of his death.  Medicare wrongly deprived the Weinstein estate the opportunity to review and contest specific Medicare payments for which Medicare demanded reimbursement as being unrelated to the malpractice claim, even if a judicial authority was to determine that the November 20, 2008 Court Order is not an "on the merits" decision.

21.     The amount in controversy exceeds $1,350.00.

22.     The ALJ and MAC failed to apply the proper legal standards in deciding the case. The ALJ and MAC failed to oblige the controlling Medicare Secondary Payer

Manual in deciding the case.  Moreover, the decisions of the ALJ and MAC are not supported by substantial competent evidence.

23.   Notwithstanding plaintiff's view that her legal position in this matter is correct, plaintiff's counsel has attempted to resolve this dispute amicably with Medicare. In counsel's view, Medicare has approached this controversy with an inflexible disposition, refusing to acknowledge the import of Medicare's own manual and refusing to acknowledge the burden of proof imposed upon Medicare in these matters.  Plaintiff remains willing to attempt to resolve this matter amicably, but in the event Medicare persists in its refusal to attempt to resolve this matter amicably, plaintiff requests summary judgment in her favor.

WHEREFORE, plaintiff requests the honorable Court to reverse the decision of the Medicare Appeals Council and to enter summary judgment in her favor and against Medicare for the amount of $58,393.57 less the net-of-procurement cost figure of $2,922.34, plus costs and interest at the legal rate from the date Medicare received full payment of its claimed lien.

 

 

**LAW OFFICE OF JAMES I. DEVINE**

Date: <u>September 13, 2012</u>          By:      <u>s/James I. Devine</u>
                                                    JAMES I. DEVINE, ESQUIRE
                                                    Attorney for Plaintiffs
                                                    509 Swede Street, Norristown, PA 19401
                                                    Telephone: (610) 292-9300
                                                    Attorney I.D. No. 39270

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH WEINSTEIN, Executrix of the    :
Estate of Irwin Weinstein, deceased    :    CIVIL ACTION No.: 12-154
                                      :
                                      :
          v.                        :
                                      :
KATHLEEN SEBELIUS, SECRETARY    :
OF THE UNITED STATES               :
DEPARTMENT OF HEALTH AND       :
HUMAN SERVICES                  :

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
TO REVERSE THE MEDICARE APPEALS COUNCIL
DETERMINATION OF AMOUNT OF MEDICARE REIMBURSEMENT
AND FOR SUMMARY JUDGMENT**

**I.**     **MATTER BEFORE THE COURT**

Pending before the Court is Plaintiff's Motion to Reverse the Medicare Appeals Council

Determination of Amount of Medicare Reimbursement, and for Summary Judgment in favor of

plaintiff.

**II.**     **FACTS**

The plaintiff, Edith Weinstein, is the duly appointed personal representative of the estate

of Irwin Weinstein. The defendant, Kathleen Sebelius, is Secretary of the United States

Department of Health and Human Services. This Court possesses subject matter jurisdiction

pursuant to 42 U.S.C.A. §405 (g) and 42 U.S.C.A. §1395ff(b)(1)(A). Venue is proper in the

United States District Court for the Eastern District of Pennsylvania pursuant to 42 U.S.C. §1395

ff (b).

Edith Weinstein filed a lawsuit captioned <u>Edith Weinstein, Executrix of the Estate</u> <u>of Irwin Weinstein, deceased v. Albert Einstein Medical Center, Elkins Park Hospital, Einstein at</u> <u>Elkins Park</u> and several other defendants, C.C.P. Philadelphia County, April Term, 2007, No. 0623 on April 11, 2007, arising from the treatment of Irwin Weinstein at Elkins Park Hospital/Einstein at Elkins Park and Albert Einstein Medical Center on April 10, 2005. Irwin Weinstein died on September 4, 2005.

In her lawsuit, Edith Weinstein claimed that Irwin Weinstein should have been administered thrombolytic therapy ("TPA"), a medication used to lyse clots and restore cerebral blood flow, to treat his cerebral stroke on April 10, 2005 within three hours of the onset of his symptoms. The defense in the underlying medical malpractice case claimed, inter alia, that the decision against administering TPA on April 10, 2005 was based on sound medical judgment. The defendants claimed that Irwin's history of ongoing hemorrhoid bleeding, his elevated blood pressure and his clinical improvement on April 10, 2005 after his initial presentation supported the decision not to administer TPA.  The defendants argued further that a CT scan study of Irwin's brain on April 16, 2005, six days later, demonstrated that Irwin suffered another newly-onset cerebral hemorrhage, which was the actual and real reason for Irwin's prolonged hospitalization and death.

The aforementioned lawsuit, <u>Weinstein v. AEMC, et al.</u> was ultimately settled amicably by the parties for a gross amount of $425,000.00. Edith Weinstein filed a Motion for Court Determination of Applicable Medicare Lien on September 26, 2008 in the trial court, which the remaining medical malpractice Defendants joined on October 2, 2008. Said motion set forth both parties' arguments concerning the alleged medical malpractice. In that motion, plaintiff requested a Court Order limiting the time frame concerning treatment for the alleged malpractice and the

amount of the Medicare recovery to $2,922.34, subject to a pro-rata deduction for procurement costs. The amount of $2,922.34 reflects the amount paid by Medicare from April 10, 2005 through April 16, 2005, the date of the subsequent head CT scan that demonstrated Irwin Weinstein's newly onset acute brain bleed. The $2,922.34 figure is calculated by pro-rating the amount Medicare paid for Irwin Weinstein's AEMC hospital admission starting on April 10, 2005.

The trial court dismissed Plaintiff's Motion for Court Determination of Applicable Medicare Lien noting that Plaintiff was free to present the lien issue in its Petition to the Philadelphia Orphans' Court for Court Approval of Settlement and Distribution in Wrongful Death and Survival Action.

On October 30, 2008, Edith Weinstein filed with the Philadelphia Orphans' Court a Petition for Court Approval of Settlement and Distribution in Wrongful Death and Survival Action and included a request for a determination of the amount owed to Medicare. Attached to said Petition was the motion Edith Weinstein had submitted to the trial court for Determination of Applicable Medicare Lien. Edith Weinstein requested that the Orphans' Court determine the amount of the Medicare recovery to be $2,922.34, subject to a pro-rata deduction for procurement costs based upon the facts related to the April 10, 2005 initial stroke and the new onset brain bleed of April 16, 2005 and pro-rata calculation of the hospital bill paid by Medicare.

The Philadelphia County Orphans' Court, per Judge O'Keefe, in the aforementioned lawsuit, Weinstein v. AEMC, et al. issued an order on November 20, 2008 approving the proposed settlement and distribution, including the allocation of the amount of the Medicare recovery to $2,922.34, subject to a pro-rata reduction for procurement costs.

Plaintiff's Motion for Court Determination of Applicable Medicare Lien, Defendant's Motion joining Plaintiff's Motion for Court Determination of Applicable Medicare Lien and Plaintiff's Petition for Court Approval of Settlement and Distribution in Wrongful Death and Survival Action were all served upon Medicare TPL, c/o JP Morgan Chase, 9000 Haggerty Road, MI1-8845, Belleville, Michigan. Without holding a fact-finding hearing and in violation of the due process rights of Edith Weinstein, the Medicare Appeals Council in its November 25, 2011 decision determined that Medicare TPL, c/o JP Morgan Chase, 9000 Haggerty Road, MI1-8845, Belleville, Michigan is not the address for the MSPRC contractor and that said address is the address for an ATM only. Administrative Record (AR) at 10.  It is unclear to plaintiff what the Medicare Appeals Council means by the terminology "ATM".  However, both Plaintiff and Defendant in the underlying medical malpractice lawsuit served their motion and response to that address, with Plaintiff her motion by FedEx delivery.  Plaintiff received a letter from MSPRC - 8 c/o JP Morgan Chase dated December 4, 2008 acknowledging receipt of the correspondence sent. See Exhibit "A" hereto; Exhibit "A" also includes the MSPRC envelope, the Fed Ex delivery confirmation report, and earlier September 25, 2008 motion and correspondence to MSPRC at said address, with the Fed Ex delivery confirmation report. MSPRC did not object to the use of said address, nor did MSPRC indicate that the address was incorrect. Therefore, for whatever purpose Medicare's agent, MSPRC used that Belleville, Michigan address, it worked for the successful delivery and response to and from MSPRC.  The Medicare Appeals Council failed to acknowledge the fact that Medicare had, in fact, received and accepted without protest correspondence and a legal motion and response at the address. Moreover, as explained further herein and the accompanying memorandum of law, Medicare is bound by "on the merits" decisions of state courts whether or not Medicare is served with the underlying state court

motions and whether or not Medicare is a party to or participates in the state court action, because Medicare has agreed in its Secondary Payer Manual to be so bound.

Following the November 20, 2008 Court Order that determined the amount Edith Weinstein owed to Medicare, the Medicare Secondary Payer Recovery Contractor ("MSPRC") issued a demand letter dated March 17, 2009 requesting payment of $58,393.57, which was the amount owed after procurement costs were deducted from the amount Medicare identified as having paid for Irwin Weinstein's care from April 10, 2005 through the date of his death September 4, 2005, $90,230.51. This $58,393.57 amount reflected Medicare's demand for reimbursement for all of the medical expenses Medicare paid starting on April 10, 2005 up until Mr. Weinstein's death on September 4, 2005, less procurement costs. In the attachment to the March 17, 2009 letter, Medicare confirmed that it paid $10,436.93 for Irwin Weinstein's 25 day Albert Einstein Hospitalization from April 10, 2005 – May 4, 2005.  AR at 338-344.

Through counsel, Edith Weinstein notified Medicare's contractor of her objection to the amount of Medicare's claim, explaining in detail the basis for the objection.  The essence of the objection is that, first, Medicare is bound by the "on the merits" decision of the state court set forth in the November 20, 2008 Court Order.   Additionally, Medicare is not entitled to be reimbursed for payment it made for treatment that the beneficiary, Irwin Weinstein, received that cannot be proven to be related to the medical negligence.  Stated differently, Medicare is entitled to be reimbursed only for those medical expense payments it made for treatment that Medicare proves was necessitated by the claimed medical negligence. Edith Weinstein paid the full amount of Medicare's claim under protest, reserving her rights.

Edith Weinstein pursued all required administrative procedures and appeals before filing this action.

5

By letter decision dated November 25, 2011, the Department of Health and Human Services, Medicare Appeals Council notified plaintiff of its decision upholding the Administrative Law Judge's decision that had affirmed Medicare's determination that plaintiff owed Medicare $58,393.57, the entire amount Medicare paid on behalf of Irwin Weinstein between April 10, 2005 and September 4, 2005, less procurement costs. Thereafter, plaintiff herein filed this lawsuit.

Plaintiffs' counsel remains willing to attempt to resolve the issue fairly and reasonably, but as the record now stands this Court should find that there is not substantial competent evidence in the record to support the findings of the ALJ or the MAC and, further, the ALJ and MAC applied an incorrect legal standard in deciding this case, including failure to properly apply a provision of the Medicare Secondary Payer Manual. Because the MAC applied the incorrect legal standard and because there is not substantial competent evidence to support the decision of the MAC, this Honorable Court should reverse the decision of the MAC and enter judgment in favor of the plaintiff for the difference between the amount Edith Weinstein paid Medicare, $58,393.57 and ($2,922.34 less procurement costs). Additionally, plaintiff should be awarded interest on the overpayment amount Medicare improperly demanded, from the time Medicare received said overpayment until the date Medicare refunds the overpayment, plus costs of suit. It should be noted that a Medicare recipient and the attorney for the Medicare recipient are subject to significant penalties if they do not pay a rightful Medicare subrogation lien claim, yet Medicare is not subject to similar penalties for demanding or receiving excessive payments.

## III.   **PROCEDURAL HISTORY**

After the Philadelphia Orphans' Court issued an Order dated November 20, 2008 that determined Medicare's claim in the underlying medical malpractice case to be $2,922.34 minus

procurement costs, on March 17, 2009 MSPRC, on behalf of Medicare, demanded a net-of-procurement cost payment of $58,393.57 from the estate of Irwin Weinstein for reimbursement of medical payments made by Medicare for health care services provided to Mr. Weinstein from April 10, 2005 through September 4, 2005.   On March 23, 2009, Edith Weinstein paid the Medicare demand amount of $58,393.57 under protest reserving her rights, and appealed the amount of Medicare's claim recovery.   The appeal by Edith Weinstein was denied on July 10, 2009. Edith Weinstein thereafter appealed that ruling to Maximus Federal Services.   In accordance with the rules concerning further appeals, Edith Weinstein appealed the adverse determination dated December 10, 2009.   After that appeal was denied on February 22, 2010 by Maximus/Medicare, Edith Weinstein on March 29, 2010 appealed the MSPRC determination to the Office of Medicare Appeals Hearings.

In advance of the ALJ hearing, Edith Weinstein requested that subpoenas be issued to Medicare designees to attest to (a) Medicare's practice of honoring state Court Orders allocating liability payments in accordance with the Medicare Secondary Payer (MSP) Manual (2008), chapter 7, at 50.4.4; and (b) a Medicare representative to identify and provide documentation at the hearing concerning the breakdown and the amount paid by Medicare for medical treatment/services to Irwin Weinstein from April 10, 2005 through September 4, 2005.   The Honorable ALJ denied these subpoena requests. AR at 124-126.   On June 29, 2010 the Honorable ALJ affirmed the Medicare determination that $58,393.57 was due and owing to Medicare.   AR at 94-102.

Edith Weinstein then filed a timely appeal to the Medicare Appeals Council.   The Medicare Appeals Council issued a ruling on November 25, 2011 affirming the decision of the ALJ. AR at 1-22. Thereafter, Edith Weinstein timely filed the instant action in this Court.

## IV.   QUESTIONS PRESENTED

**Q.**   Whether the specific designations by the Philadelphia Orphans' Court, including the amount owing to Medicare for medical services necessitated by the alleged malpractice in its November 20, 2008 Order and allocations of payments to nonmedical losses constitutes a court order "on the merits" such that Medicare is barred by its own regulations and guidelines from seeking a greater recovery?

**Suggested Answer:** Yes.

**Q.**   Whether Medicare has met its burden of proving that Irwin Weinstein's treatment as of and after April 16, 2005 was necessitated by the underlying medical malpractice of failing to administer thrombolytic therapy to Irwin Weinstein on April 10, 2005?

**Suggested Answer:** No.

**Q.**   Whether there is substantial competent evidence of record to support the decisions of the Honorable Administrative Law Judge and the Medicare Appeals Council?

**Suggested Answer:** No.

## V.   LEGAL STANDARD

By way of background, generally, when payment is made by Medicare for medical services that can reasonably be expected to be paid by a primary plan, including a liability

insurer, the United States is subrogated, to the extent of payment made by Medicare for such items of service expected to be paid by a primary plan, to any right of recovery the Medicare recipient has against a responsible third party.  42 U.S.C. §1395y(b)(2) (generally), 42 U.S.C. §1395y(b)(2)(B)(ii) and 42 U.S.C. §1395y (b)(2)(B)(iv).

A Medicare recipient who has exhausted the administrative appeals process is entitled to judicial review of that decision, as provided in 42 U.S.C. §405(g).  42 U.S.C. §1395 ff(b)(1).

As set forth in pertinent part in 42 U.S.C. § 405(g),

> "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow…As part of the Commissioner's answer the Commissioner…shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing…The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.  Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."

Under the law of Pennsylvania, which controlled the underlying medical malpractice claim in this case, the estate of Irwin Weinstein was entitled to recover only those medical expenses that were paid for treatment necessitated because of the malpractice.  See, e.g., Pa. Suggested Std. Civil Jury Instructions Nos. 14.10, 14.20 and 14.30 (Civ.).  See also S.G. Litvin, G.A. McHugh, Jr. West's Pennsylvania Practice, Torts: Law and Advocacy (West Pub. Co.

1996), Vol. 4 at §12.2 "Recovery for Past Medical Expenses" ("Under Pennsylvania law, damages are recoverable for medical expenses and rehabilitative care made necessary by the defendant's misconduct. The critical element of proof necessary to recovering such damages is evidence that the medical expenses incurred were necessary by virtue of the defendant's conduct..."); Phillips v. Gerhart, 801 A.2d 568 (Pa. Super. 2002). Federal Courts applying Pennsylvania law have recognized the requirement that claimed medical expenses in a tort lawsuit must have been made necessary by defendant's tortious conduct. Medunic v. Lederer, 533 F.2d 891, 893 n.4 (3d Cir. 1976); Moore v. Home Depot U.S.A. Inc., 2007 WL 4322208 (E.D.Pa. Dec. 6, 2007) (No. 07-CIV-461).

Therefore, with respect to a claim for medical expenses, the estate of Irwin Weinstein in pursuit of the underlying third party medical malpractice claim, was entitled to recover from any negligent tortfeasor, inter alia, the amount paid by Medicare for medical treatment that Irwin Weinstein needed as a result of the medical malpractice. The corollary is likewise true: Unquestionably, under Pennsylvania law a victim of the tortfeasor is not permitted to collect from the tortfeasor the cost of medical treatment that cannot be proven to be the result of the negligence committed by the tortfeasor. Consequently, the only medical bill payments that were collectible by the Weinstein estate in the underlying medical malpractice action, and in turn reimbursable to Medicare, are those Medicare payments that reflect treatment of Irwin Weinstein necessitated by medical malpractice. The estate of Irwin Weinstein was not permitted to recover and did not recover monies for Medicare-paid medical treatments which treatments were necessary irrespective of the professional negligence, but were needed or would have been needed because of Irwin Weinstein's newly onset brain bleed demonstrated on the April 16, 2010 CT scan. Likewise, the Weinstein estate was not permitted to recover and did not recover

Medicare-paid medical expenses that could not be proven to have been necessitated by the alleged malpractice, including the cost of medications he received following the April 10, 2005 stroke which he had also required before the April 10, 2005 stroke.

When there is a dispute concerning the amount Medicare is claiming for reimbursement from a third party lawsuit recovery because the recipient asserts that Medicare is seeking reimbursement for treatment payments unrelated to the third party claim, Medicare bears the burden of proof to demonstrate and justify that each and every payment it seeks in reimbursement was necessitated by the malpractice or misconduct of the third party for which the recipient was compensated.  Urso v. Thompson, 309 F. Supp. 2d 253, 259-260 (D. Conn. 2004).  See also U.S. v. Weinberg, 2002 WL 32356399 (E.D. Pa. July 1, 2002) at *6. Consequently, when there is a dispute between Medicare and the Medicare recipient about whether the recipient obtained a third party recovery for certain medical care and treatment for which Medicare paid, Medicare has the burden of proving to the ALJ and MAC, and ultimately to the Court, the particular medical treatment and related expense that was caused by the wrongful conduct of the third party for which the Medicare recipient received a third party recovery.  See Weinberg, id. and Urso, supra.  Because the Weinstein estate was not permitted to recover in the third party lawsuit the medical expenses that were not caused by the malpractice or the medical expenses that could be proven to be caused by the malpractice, Medicare is not permitted to claim or recover such expenses from the Weinstein estate.

In its Secondary Payer Manual, Chapter 7 at 50.4.4 (2008), Medicare has specifically consented to state courts or other adjudicators making allocations of monetary amounts as between the recoverable medical expenses and other elements of a personal injury recovery. Medicare has agreed to be bound by those "on the merits" determinations. As such, Medicare has

agreed to submit to the jurisdiction of state courts and adjudicators and must honor a state court "on the merits" determination.

In reviewing the decision of the Administrative Law Judge and Medicare Appeals Council, this Court makes two inquiries.  The first question is whether the Administrative Law Judge and MAC applied the correct legal principles in deciding the case.  The second question is whether the Administrative Law Judge's decision and Medicare Appeals Council affirmation is supported by substantial evidence.  Friedberg v. Schweiker, 771 F.2d 445, 447 (3d Cir. 1983). "Even if the Secretary's factual findings are supported by substantial evidence, this court may review whether the administrative determination was made upon correct legal standards." Id. See also Segal v. Barnhart, 342 F. Supp. 2d 338, 340 (E.D. Pa. 2004) (The Court can overturn the decision of the ALJ where the ALJ's decision is based upon incorrect legal standards.)

Substantial evidence is defined as, "more than a mere scintilla.  It means such evidence as a reasonable mind would accept as adequate."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "[I]t is such relevant evidence that would be sufficient to support a reasonable conclusion." Segal, supra, 342 F.Supp 2d at 340.

Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

VI.   **ARGUMENT**

**1.     The State Court November 20, 2008 Court Order Was An "On the Merits" Decision Binding Upon Medicare.**

The Medicare Secondary Payer Manual at chapter 7, section 50.4.4 states in its entirety:

In general, Medicare policy requires recovering payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made. That includes situations in which the settlements do not expressly include damages for medical expenses. Since liability payments are usually based on the injured or deceased person's medical expenses, liability payments are considered to have been made "with respect to" medical services related to the injury even when the settlement does not expressly include an amount for medical expenses. To the extent that Medicare has paid for such services, the law obligates Medicare to seek recovery of its payments. **The only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case. If the court or other adjudicator of the merits specifically designate amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation. Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services.** (emphasis added).

In an effort to avoid the rational and inevitable consequence of its Secondary Payer Manual instructions, chapter 7, section 50.4.4, requiring Medicare to honor "on the merits" Court Orders and adjudicator decisions that determine allocations of liability payments to nonmedical losses and allocation of the amount owing to Medicare in a particular claim, Medicare challenges the Philadelphia Orphans' Court November 20, 2008 Order as not being "on the merits."  A Court's decision is "on the merits" when the Court has "acted on the substance of the claim" rather than on a procedural or technical ground.  Greene v. Palakovich, 606 F.3d 85, 98 (3d Cir. 2010) aff'd sub nom. Greene v. Fisher, 132 S. Ct. 38 (2011).  There is nothing of record to suggest that Judge O'Keefe did not decide the issue of the amount owing to Medicare on the substance of the issue presented.  To the contrary, Philadelphia Orphans' Court Judge O'Keefe was free to accept or reject the argument advanced by Edith Weinstein as petitioner in the matter before the Court concerning the provable time limitation of necessary medical treatment

resulting from the failure to administer TPA therapy to Irwin Weinstein, i.e., April 10, 2005 to April 16, 2005. The fact that Irwin Weinstein suffered a newly onset brain bleed on April 16, 2005 wholly supports Judge O'Keefe's decision. In fact, the Medicare Appeals Council found that the April 16, 2005 CT scan that demonstrated a newly onset brain bleed in the context of Irwin Weinstein's health situation, is the reason that proving the subsequent medical costs were related to the malpractice "would be difficult if not impossible." AR at 17. Further evidencing Judge O'Keefe's careful review of the petition is the fact that Judge O'Keefe declined to allocate postage and copying costs as compensable case expenses. Such allocations of recoverable medical expenses versus other types of recovery, such as pain and suffering and similar personal injury action damages are precisely the type of allocations the Orphans' Court is authorized to make and makes on a regular basis.

Medicare advances the argument that Judge O'Keefe did not within the November 20, 2008 Court Order adequately designate the medical expenses owing to Medicare for payments it made as a result of the alleged negligence of the defendants versus the nonmedical liability payment designations. Medicare's argument is without merit. Judge O'Keefe explicitly identified the amount from the $425,000.00 settlement recovery to be allocated to Medicare for reimbursement of the medical payments it made as a result of the alleged negligence and apportioned the remainder of the net settlement recovery to the nonmedical Wrongful Death and Survival Action liability recoveries, which include elements of recoverable damages under Pennsylvania law, such as conscious pain and suffering, and loss of consortium for the surviving spouse and the other recoverable elements of damages under Pennsylvania State law.

The ALJ mistakenly concluded that Judge O'Keefe must have implicitly determined that all of the medical treatment Irwin Weinstein received between April 10, 2005 and his date of

death, September 4, 2005 must have been necessitated by the alleged malpractice of failing to administer TPA on April 10, 2005. However, the ALJ's legal analysis is without legal basis. The failure to administer TPA on April 10, 2005 certainly contributed to and increased the risk of Irwin Weinstein's death, which provides the legal basis for a Wrongful Death/Survival Action allocation. However, the April 16, 2005 newly onset brain bleed independently necessitated the care Irwin Weinstein received from April 16, 2005 through his date of death and likewise contributed to and increased the risk of his death. Judge O'Keefe's allocations are perfectly sensible.

A fair application of Chapter 7, section 50.4.4 of the Medicare Secondary Payer Manual mandates a reversal of the Medicare Appeals Council decision and the grant of relief sought by Edith Weinstein herein.

2.      **The MAC And ALJ Each Applied The Incorrect Legal Standard**
        **In Making Its Findings and Reaching Its Decisions.**

Although Medicare bears the burden of proof in connection with its subrogation claim arising from a third party recovery by a Medicare recipient, under which Medicare must establish which of the payments it made were for medical care necessitated by the underlying medical malpractice, the MAC and ALJ both failed to recognize and apply this controlling legal principle in making its' respective decisions.

An instructive analysis concerning the burden of proof in cases where Medicare is seeking reimbursement for medical expense payments from a Medicare recipient's third party tort lawsuit recovery is provided by U.S. v. Weinberg, 2002 Westlaw 32356399 (E.D. Pa. July 1, 2002).

In Weinberg, the United States filed suit against an attorney to recoup Medicare payments it made on behalf of Emilie Gaither, one of the attorney's former clients. Ms. Gaither was injured in an automobile accident and received treatment at two hospitals. Approximately 46 days after the accident, Ms. Gaither suffered a stroke. After Ms. Gaither and her attorney settled the case arising from the automobile accident, Medicare's contractor, Mutual of Omaha, sought to recover Medicare payments for medical services provided after the auto accident, including the payments made for stroke treatment. Ms. Gaither's attorney objected, claiming there was no causal link between the auto accident and Ms. Gaither's stroke. Therefore, Ms. Gaither's attorney argued that Medicare was not entitled to recovery of payments Medicare had made for Ms. Gaither's stroke treatments. On cross-motions for summary judgment, the Court stated that Medicare bears of burden of proving its claim that Ms. Gaither's stroke was causally related to the motor vehicle accident.

> "A fact issue exists, however, as to whether Ms. Gaither's stroke was causally related to the motor vehicle accident. If the two were unconnected, Medicare may not seek reimbursement from Ms. Weinberg. While the government has proffered expert reports demonstrating a link between the accident and the stroke, the burden of proving causation rests upon the Government." Weinberg, 2002 WL 32356399, slip op. at p. 6.

The Court in Weinberg ultimately ruled that summary judgment was inappropriate because the credibility of the Government's experts remained at issue. Id. Despite the Court's holding in Weinberg, Medicare disputes that it must shoulder the burden of proof in this matter.

Likewise, the Court in Urso v. Thompson, 309 F. Supp. 2d 253 (D. Conn. 2004), reached a similar result: "...[I]t is only fair and just that Medicare bear the ultimate burden of justifying the amount it seeks in reimbursement." Id. at 260.

In this case, the MAC rejected the Weinstein estate's claim that Medicare had the burden of proof in connection with the amount it sought in its subrogation claim. The MAC minimized the authoritative weight of U.S. v. Weinberg, 2002 Westlaw 32356399 (E.D. Pa. July 1, 2002) and the decision in Urso by attempting to distinguish those holdings on grounds that are not germane to the issue of which party bears the burden of proof. It would be incongruous for a Court to hold that Medicare bears the burden of proof only in instances where a recipient refuses to pay Medicare any reimbursement, but the Medicare recipient bears the burden of proof where the Medicare recipient has paid the Medicare demand under protest, reserving her rights. It is equally unavailing to claim that Medicare only bears the burden of proof where it concedes, as it conceded in Urso, that some portion of its claim is unsubstantiated.

Instead of requiring Medicare to demonstrate which, if any, of Irwin Weinstein's medical expenses following his April 16, 2005 new onset brain bleed were necessitated by the underlying malpractice, i.e. the failure administer TPA on a timely basis, the MAC simply presumed the causal connection. Yet, this presumption is belied by the MAC's own findings. The MAC concedes that it is medically and scientifically uncertain which of the two brain events, April 10, 2005 or April 16, 2005 necessitated the medical treatment and payments after April 16, 2005. See MAC opinion at p. 19, AR at p. 21. Consequently, the MAC has effectively conceded that it could not meet the "difficult if not impossible" burden of proof in this case of distinguishing which medical expenses following the April 16, 2005 new brain bleed were attributable to the April 10, 2005 versus the April 16, 2005 brain events. MAC opinion at p.15, AR at p. 17.

The estate of Irwin Weinstein, even though it did not bear the burden of proof, provided the expert report of W. Stover Wiggins, M.D. who opined that the April 16, 2005 new onset

brain bleed would have required subsequent treatment up through the date of his death. AR at 1774-1775.

The ALJ and MAC plainly failed to apply the proper legal standard that places the burden of proof upon Medicare, the party asserting a subrogation claim. Instead, the ALJ and MAC simply decided that the estate of Irwin Weinstein must reimburse Medicare for post April 16, 2005 Medicare-paid bills, even though Medicare asserts that it is difficult if not impossible to prove whether the care subsequent to April 16, 2005 was the result of the brain event of April 10, 2005 or the brain event of April 16, 2005.

An objective review of the record plainly demonstrates that Medicare did not meet its burden of proof. Because Medicare failed to meet its burden of proof in establishing what treatments and payments were made as a result of the professionally careless act, Medicare is not entitled to any reimbursement for payments it made for Mr. Weinstein.

Medicare bears the burden of proof in connection with its pursuit of a subrogation claim and if it chooses not to participate in a hearing, as occurred here, it risks the consequences of failing to carry its burden. The obligation of a party who bears the burden of proof is hornbook law. As succinctly stated in <u>Whigham v. Metropolitan Life Ins. Co.</u>, 343 Pa. 149, 156, 22 A.2d 704, 707 (1941):

> "The burden of proof...cannot be met by conjectures. The phrase 'burden of proof' means exactly what it says...[P]roof is required of the party on whom is the burden of establishing the truth of the basic proposition essential to recovery. Mere conjectures or guesses do not supply proof...[I]n a civil case the evidence of facts and circumstances on which the plaintiff relies and the inferences logically deducible therefrom must so preponderate in favor of the basic proposition he is seeking to establish as to exclude any equally well-supported belief in any inconsistent proposition."

3.    **There Is Not Substantial Competent Evidence That Supports The MAC Finding That Medicare Is Entitled To Reimbursement Of The Amount Medicare Paid For Irwin Weinstein's Medical Care Following The April 16, 2005 Newly Onset Brain Bleed**

The MAC determined that all of the medical care that followed the newly onset brain bleed of April 16, 2005 necessarily resulted from the negligent failure to administer TPA on April 10, 2005, rather from the April 16, 2005 new onset brain bleed.   There is no legal foundation supporting that conclusion.  Expert testimony is required to establish the causal link between the failure to administer TPA on April 10, 2005 (or the April 10, 2005 stroke) and the treatment provided after a newly onset brain bleed on April 16, 2005.   See, e.g. Jones v. Montefiore Hospital, 494 Pa. 410, 431 A. 2d 920 (1981) and Billman v. Saylor, 761 A. 2d 1208 (Pa. Super. 2000). Medicare did not offer any testimony or evidence concerning what specific medical care was required as a result of the failure to administer TPA on April 10, 2005 (or the April 10, 2005 stroke) versus what care was necessary as a result of the newly onset brain bleed on April 16, 2005. Without such expert opinion, there is a lack of substantial evidence to support the MAC's determination.

Moreover, because Medicare failed to provide a detailed breakdown of the medical payments it made, and to identify the specific services and treatments for which it paid, despite request, the Estate of Irwin Weinstein has been unable to effectively challenge the legitimacy of the totality of Medicare's claim.  For example, the MAC acknowledged that Irwin Weinstein had a significant medical history, including hypertension, diabetes, and hyperlipidemia, for which he was taking multiple medications before the April 10, 2005 stroke.  MAC opinion at p. 2, AR at p.4.  Without providing more detailed statements of the treatment for which Medicare paid and the cost of each treatment, Edith Weinstein is rightfully concerned that Medicare is seeking

19

reimbursement for the very same medications Mr. Weinstein received for these pre-existing medical diagnoses following the April 10, 2005 stroke. Mr. Weinstein needed these medications irrespective of his strokes, not because of any stroke, and not because of the malpractice. Medicare, with the approval of the ALJ and MAC, improperly stifled this proper inquiry by refusing to produce the requested information. Edith Weinstein rightfully believes that Medicare has made an overreaching reimbursement demand, including a claim for reimbursement of the payments it made for medications that Irwin Weinstein needed before and after the April 10, 2005 stroke irrespective of the malpractice or strokes.

VII.   **CONCLUSION**

The Medicare Secondary Manual, Ch. 7, at 50.4.4, binds Medicare to the allocation of recoverable medical expenses necessitated by the alleged malpractice as determined by the Philadelphia Orphans' Court.

Moreover, when a party has the burden of proof, that party must provide competent evidence in support of its claim. For example, in Weinberg, supra, in pursuing a subrogation claim following the Medicare recipient's settlement recovery in an automobile accident claim, Medicare produced expert reports to substantiate its claim that the auto accident caused the Medicare recipient's stroke and that the auto accident necessitated the stroke treatments for which Medicare paid. Thus, Medicare produced some competent evidentiary proof to meet its burden of establishing which of the Medicare-paid medical expenses were necessitated by the auto accident. Here, Medicare provided no such competent evidentiary proof to the ALJ or the MAC identifying or explaining which of Irwin Wienstein's medical expenses following the April 16, 2005 new brain bleed were necessitated by the underlying wrongful conduct. Simply assuming or presuming that all of Irwin Wienstein's treatments and expenses were necessitated

by the underlying wrongful conduct does not come close to meeting the burden of proof. By asserting that it would be difficult if not impossible to prove whether the post April 16, 2005 medical treatments were necessitated by the April 16, 2005 brain bleed or the April 10, 2005 brain event, the MAC effectively conceded that Medicare did not meet its burden of proof. The MAC simply did not apply the correct legal standard, leading to an incorrect adjudication.

Plaintiff's counsel has attempted on several occasions to seek Medicare's cooperation to address and appropriately resolve the lien claim issue via negotiation. Despite Medicare's assertion that it is difficult if not impossible to prove whether the medical care and attendant costs rendered after the April 16, 2005 newly onset brain bleed are attributable to that event versus the consequence of the April 10, 2005 stroke, Medicare refuses to negotiate the lien claim and demands full reimbursement. Medicare turns a blind eye to the law that limits Medicare's right of recovery to those medical expenses that were recoverable by the Weinstein estate in the underlying case. Likewise, Medicare refuses to acknowledge that it bears the burden of proof in connection with its asserted subrogation lien. The ALJ and the MAC failed to impose upon Medicare its burden of proof obligation, and Medicare failed to meet its burden of proof.

It is respectfully submitted that the only reasonable conclusion that the Court may draw from the record is that the MAC and the ALJ findings are wholly unsupported by competent evidence. Summary judgment should be entered in this case in favor of the plaintiff, as opposed to a remand, because Medicare as the party seeking subrogation simply and plainly failed to meet its burden of proof of demonstrating which, if any, of the medical payments it made for care rendered to Irwin Weinstein after April 16, 2005 were the result of malpractice. Medicare is not entitled to a "second shot" as this Court has authority under 42 U.S.C. §405(g) to reverse both the MAC's decision and the ALJ's decision and enter judgment in plaintiff's favor.

For all of the reasons stated above, plaintiff respectfully requests that the Honorable Court grant plaintiffs' motion, reverse the Medicare Appeals Council Determination of the amount of Medicare reimbursement and enter the attached Order.

                                    LAW OFFICE OF JAMES I. DEVINE


Date: September 13, 2012          By:   s/James I. Devine
                                        JAMES I. DEVINE, ESQUIRE
                                        Attorney for Plaintiff
                                        509 Swede Street, Norristown, PA 19401
                                        Telephone: (610) 292-9300
                                        Attorney I.D. No. 39270

# EXHIBIT "A"

LAW OFFICES
# JAMES I. DEVINE
509 SWEDE STREET
NORRISTOWN, PENNSYLVANIA 19401
————
(610) 292-9300
FAX (610) 270-0503

October 14, 2008

**VIA FEDERAL EXPRESS**

Medicare TPL
c/o JP Morgan Chase
9000 Haggerty Road
MI1-8245
Belleville, MI 48111

      Re:    Edith Weinstein, Executrix of the Estate of Irwin Weinstein, deceased v.
             Albert Einstein Medical Center, et al., C.C.P. Phila., April Term, 2007, No.
             0623

Dear Sir or Madam:

      Please be advised that the control number governing plaintiff's Motion for Court
Determination of Medicare Lien, which was filed with the Court on September 26, 2008 in
this matter, is **097226**. A copy of this Motion has been previously provided to you by
Federal Express, under cover letter dated September 25, 2008. Thank you.

                              Very truly yours,

                              JAMES I. DEVINE

JID/egm

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

# FedEx US Airbill

**Express**

FedEx Tracking Number  **8665 1026 0365**

**1 From** Please print and press hard.

Date

Sender's FedEx Account Number  **2782-4818-6**

Sender's Name  **JAMES I. DEVINE, ESQUIR** Phone ( **610** ) **292-9300**

Company  **LAW OFFICES OF JAMES DEVINE**

Address  **507 SNEDE ST**

City  **NORRISTOWN**  State  **PA**  ZIP  **19401-4806**

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.
**Nelson**

**3 To**

Recipient's Name  **Wendee Pc**  Phone ( )

Company  **c/o 17 Wenn Sanez**

Recipient's Address  **8000 Ragozzn Read**
We cannot deliver to P.O. boxes or P.O. ZIP codes.

Address  **UN-800**

City  **Bellville**  State  **NJ**  ZIP  **0331**

**0385386232**

## Find drop-off locations at fedex.com
Simplify your shipping. Manage your account. Access all the tools you need.

**4a Express Package Service**  *Packages up to 150 lbs.*

☑ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx Standard Overnight
Next business afternoon.* Saturday Delivery NOT available.

☐ FedEx First Overnight
Earliest next business morning delivery to select locations.* Saturday Delivery NOT available.

☐ FedEx 2Day
Second business day.* Thursday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx Express Saver
Third business day.* Saturday Delivery NOT available.

*To select locations.

**4b Express Freight Service**  *Packages over 150 lbs.*

☐ FedEx 1Day Freight*
Next business day.* Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx 2Day Freight
Second business day.* Thursday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

*Call for Confirmation.  *To select locations.

**5 Packaging**

☑ FedEx Envelope*
☐ FedEx Pak*  Includes FedEx Small Pak, FedEx Large Pak, and FedEx Sturdy Pak.
☐ FedEx Box
☐ FedEx Tube
☐ Other

*Declared value limit $500.

**6 Special Handling**

☐ SATURDAY Delivery
Available ONLY for FedEx Priority Overnight, FedEx 2Day, and FedEx Express Saver to select locations.

☐ HOLD Weekday
at FedEx Location

☐ HOLD Saturday
at FedEx Location
Available ONLY for FedEx Priority Overnight and FedEx 2Day to select locations.

Does this shipment contain dangerous goods?

☑ No
☐ Yes  As per attached Shipper's Declaration
☐ Yes  Shipper's Declaration not required.
☐ Dry Ice  Dry Ice, 9, UN 1845 ___ kg

Dangerous goods (including dry ice) cannot be shipped in FedEx packaging.  ☐ Cargo Aircraft Only

**7 Payment**  *Bill to:*

☑ Sender
Acct No. in Section 1 will be billed.
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check

Enter FedEx Acct. No. or Credit Card No. below.

FedEx Acct. No.
Credit Card No.  ___ Exp. Date

**Total Packages**  **Total Weight**  **Total Declared Value†**  $ .00

†Our liability is limited to $100 unless you declare a higher value. See back for details. By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

**8 Residential Delivery Signature Options**  If you require a signature, check Direct or Indirect.

☑ No Signature Required
Package may be left without obtaining a signature for delivery.

☐ Direct Signature
Someone at recipient's address may sign for delivery.

☐ Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery.

Rev. Date 10/04•Part #157627•©1994-2003 FedEx•PRINTED IN U.S.A.•QRS

**519**

Track Shipments/FedEx Kinko's Orders
Detailed Results

(?) Quick Help

| | |
|---|---|
| **Tracking number** | 866510260365 |
| **Signed for by** | E.VAMVOUDAAIS |
| **Ship date** | Oct 14, 2008 |
| **Delivery date** | Oct 15, 2008 9:00 AM |
| **Status** | Delivered |
| **Signature image available** | Yes |
| **Reference** | WEINSTEIN |
| **Delivered to** | Shipping/Receiving |
| **Service type** | Priority Envelope |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| **Oct 15, 2008** | 9:00 AM | Delivered | | |
| | 8:05 AM | On FedEx vehicle for delivery | ROMULUS, MI | |
| | 7:23 AM | At local FedEx facility | ROMULUS, MI | |
| | 4:54 AM | At dest sort facility | ROMULUS, MI | |
| | 1:32 AM | Departed FedEx location | NEWARK, NJ | |
| | 12:13 AM | Arrived at FedEx location | NEWARK, NJ | |
| **Oct 14, 2008** | 8:35 PM | Left FedEx origin facility | KING OF PRUSSIA, PA | |
| | 6:22 PM | Picked up | KING OF PRUSSIA, PA | |

Signature proof | E-mail results | Track more shipments/orders

**Subscribe to tracking updates (optional)**

   

**MSPRC**   **CMS/**
CENTERS for MEDICARE & MEDICAID SERVICES

 Learn about your letter at *www.msprc.info*

12/4/2008

JAMES DEVINE
509 SWEDE STREET
NORRISTOWN, PA  19401

Re: Insufficient Information to Process

To Whom It May Concern:

We received your correspondence on 10/15/2008 .

Unfortunately, we are unable to process it without first receiving further information; we must have the Health Insurance Claim Number (HICN) associated with the case. Please resend the correspondence with this information.

We have enclosed the correspondence for your reference.

If you have any questions, please contact us at 1-866-MSPRC-20 (1-866-677-7220).

Sincerely,

MSPRC Support Services





MSPRC-8

c/o JP Morgan Chase
P.O. Box 33832
Detroit, MI 48232-5832

JAUXS11 13401

PRESORTED
FIRST CLASS

02 1P
0004815900
MAILED FROM ZIP CODE 48232
$ 00.394
2008
UNITED STATES POSTAL SERVICE

FM12-08

LAW OFFICES

# JAMES I. DEVINE

509 SWEDE STREET

NORRISTOWN, PENNSYLVANIA 19401

—————

(610) 292-9300

FAX (610) 270-0503

September 25, 2008

Medicare
C/o JP Morgan Chase
9000 Haggerty Road
MI1-8245
Belleville, MI 48111

Re:     Irwin Weinstein
        Medicare No: 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A
        Weinstein v. AEMC, et al.
        C.C.P. Phila., April Term 2007, No. 0623

Dear Sir or Madam,

        Enclosed herewith please find Plaintiff's Motion for Court Determination of
Applicable Medicare Lien.  Thank you.

                              Very truly yours,

                              *James I. Devine*

                              JAMES I. DEVINE

JID/reg
Enclosure

**FedEx**

Español | Customer Support | FedEx Locations  Search     Go

Package/Envelope    Freight    Expedited    Office/Print Services

Ship ›    Track ›    Manage ›    Business Solutions ›

Track Shipments/FedEx Kinko's Orders

## Detailed Results

📇 Printable Version   ❓ Quick Help

| | | | |
|---|---|---|---|
| Tracking number | 866510260479 | Reference | WEINSTEIN |
| Signed for by | B.BUSH | Delivered to | Mailroom |
| Ship date | Sep 25, 2008 | Service type | Standard Pak - Direct |
| Delivery date | Sep 26, 2008 9:30 AM | | Signature Required |
| | | Weight | 1.0 lbs. |

**Wrong Address?**
Reduce future mistakes by using FedEx Address Checker.

**Tracking a FedEx SmartPost Shipment?**
Go to shipper login

| Status | Delivered |
|---|---|
| Signature image available | Yes |

FedEx Desktop:
Tracking at
your fingertips.

Learn more ›

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| Sep 26, 2008 | 9:30 AM | Delivered | | |
| | 7:56 AM | On FedEx vehicle for delivery | ROMULUS, MI | |
| | 7:29 AM | At local FedEx facility | ROMULUS, MI | |
| | 4:43 AM | At dest sort facility | ROMULUS, MI | |
| | 2:19 AM | Departed FedEx location | NEWARK, NJ | |
| | 1:04 AM | Arrived at FedEx location | NEWARK, NJ | |
| Sep 25, 2008 | 8:25 PM | Left FedEx origin facility | KING OF PRUSSIA, PA | |
| | 6:18 PM | Picked up | KING OF PRUSSIA, PA | |

Signature proof | E-mail results | Track more shipments/orders

**Subscribe to tracking updates (optional)**

Your name: _____    Your e-mail address: _____

| E-mail address | Language | Exception updates | Delivery updates |
|---|---|---|---|
| | English | | ☐ |
| | English | | ☐ |
| | English | | ☐ |
| | English | | ☐ |

Select format: ⦿ HTML  ◯ Text  ◯ Wireless

Add personal message:

Not available for Wireless or non-English characters.

☐ By selecting this check box and the Submit button, I agree to these Terms and Conditions    Submit

# FedEx Express US Airbill

FedEx Tracking Number **8665 1026 0479**

**...AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.**

Item DG No. **0215**

Sender's Copy

**1 From** Please print and press hard.

Date

Sender's FedEx Account Number **2782-4818-5**

Sender's Name **JAMES I. DEVINE, ESQUIR** Phone **(610 292-9300**

Company **LAW OFFICES OF JAMES DEVINE**

Address **509 SWEDE ST**
Dept/Floor/Suite/Room

City **NORRISTOWN** State **PA** ZIP **19401-4806**

**2 Your Internal Billing Reference**
**Medicare TRL — Weinstein**

**3 To**

Recipient's Name **C/o JP Morgan Chase** Phone ( )

Company **C/o JP Morgan Chase**

Address **9000 Haggerty Road**
We cannot deliver to P.O. boxes or P.O. ZIP codes.

**MA-8245**
Dept/Floor/Suite/Room

To request a package be held at a specific FedEx location, print FedEx address here.

Address

City **Belleville** State **MI** ZIP **48111**

**4a Express Package Service**  *Packages up to 150 lbs.*

☐ FedEx Priority Overnight
☑ FedEx Standard Overnight
☐ FedEx First Overnight

☐ FedEx 2Day
☐ FedEx Express Saver

**4b Express Freight Service**  *Packages over 150 lbs.*

☐ FedEx 1Day Freight
☐ FedEx 2Day Freight
☐ FedEx 3Day Freight

**5 Packaging**

☑ FedEx Envelope*
☐ FedEx Pak*
☐ FedEx Box
☐ FedEx Tube
☐ Other

**6 Special Handling**

☐ SATURDAY Delivery
☐ HOLD Weekday at FedEx Location
☐ HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

☑ No   ☐ Yes   ☐ Yes   ☐ Dry Ice   ☐ Cargo Aircraft Only

**7 Payment** *Bill to:*

☑ Sender   ☐ Recipient   ☐ Third Party   ☐ Credit Card   ☐ Cash/Check

FedEx Acct No.

Total Packages   Total Weight   Total Declared Value†
$ .00

**8 Residential Delivery Signature Options**

☐ No Signature Required
☑ Direct Signature
☐ Indirect Signature

Rev. Date 10/04 Part #157279-0139A-2004 FedEx PRINTED IN U.S.A. CRB

**0385386232**

**519**

Ship and track packages at fedex.com
Simplify your shipping. Manage your account. Access all the tools you need.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH WEINSTEIN, Executrix of the   :
Estate of Irwin Weinstein, deceased    :   CIVIL ACTION No.: 12-154
    :
    :
    :
   v.      :
    :
KATHLEEN SEBELIUS, SECRETARY  :
OF THE UNITED STATES      :
DEPARTMENT OF HEALTH AND   :
HUMAN SERVICES      :

## CERTIFICATE OF SERVICE

I, James I. Devine, Esquire, attorney for plaintiff, hereby certify that a true and

correct copy of Plaintiff's Motion for Reversal of Medicare Appeals Council

Determination of Amount of Medicare Reimbursement and For Summary Judgment with

Memorandum of Law in support of same, were served upon Virginia R. Powel, Esquire,

and Noreen C. O'Grady, Esquire via email:

Virginia R. Powel, Esquire
U.S. Attorney's Office
615 Chestnut St.
Suite 1250 Philadelphia, PA 19106-4476
virginia.powel@usdoj.gov

Noreen C. O'Grady
Assistant Regional Counsel
Office of the General Counsel, Region III
Department of Health and Human Services
Suite 418, The Public Ledger Building
150 S. Independence Mall W.
Philadelphia, PA 19106-3499
Noreen.OGrady@hhs.gov

**LAW OFFICE OF JAMES I. DEVINE**

Date: 9/13/12       By: _James I. Devine_

JAMES I. DEVINE, ESQUIRE
Attorney for Plaintiff