IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDITH WEINSTEIN, Executrix of the Estate of Irwin Weinstein, deceased | : | CIVIL ACTION No.: 12-154 |
| | : | |
| v. | : | |
| | : | |
| KATHLEEN SEBELIUS, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES | : | |

## ORDER

AND NOW, this          day of                    , 2012,  upon

consideration of defendant's motion for summary judgment and plaintiff's response

thereto, it is hereby ORDERED that defendant's motion is DENIED.

BY THE COURT:

_____
HONORABLE PAUL S. DIAMOND
*United States District Court Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH WEINSTEIN , Executrix of the    :
Estate of Irwin Weinstein, deceased    :    CIVIL ACTION No.: 12-154
                                   :
                                   :
          v.                    :
                                     :
KATHLEEN SEBELIUS, SECRETARY    :
OF THE UNITED STATES                 :
DEPARTMENT OF HEALTH AND      :
HUMAN SERVICES                  :

### **Plaintiff's Response to Defendant's Motion for Summary Judgment**

Plaintiff, Edith Weinstein, responds to the motion for summary judgment filed by

Kathleen Sebelius, Secretary, Department of Health and Human Services (hereafter "Medicare")

as follows.

First, Edith Weinstein incorporates, as if set forth in full herein, her own motion for

summary judgment and accompanying memorandum of law that, in her view, correctly analyzes

the issues before the Court.  For the reasons set forth in plaintiff's motion for summary judgment

and accompanying memorandum of law as well as in this response, defendant's motion should be

denied and plaintiff's motion should be granted.

One fundamental flaw in Medicare's argument is Medicare's failure to acknowledge and

reckon both the controlling legal precepts pertinent to the issue presented in this matter and the

consequences of those controlling precepts.  The initial relevant legal precept is that Medicare is

entitled to be reimbursed from a Medicare recipient's third party settlement only that amount

which the Medicare recipient/claimant in the underlying action may recover from the defendant

in the underlying action.  If the Medicare recipient/claimant could not have obtained a monetary

recovery from the defendant in the underlying action for certain medical expenses paid by

Medicare, then Medicare may not obtain a recovery from the Medicare recipient for those payments Medicare made which the Medicare recipient was not able to  recover from the tortfeasor.

Specifically, the Medicare Secondary Payer statute requires reimbursement to Medicare from a third party settlement "with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service..." 42 U.S.C. § 1395 y(b)(2)(B)(ii).  The next sentence in the Medicare Secondary Payer statute states that a primary plan's responsibility for such payment "may be" demonstrated by a payment (i.e. third party settlement) conditioned upon the recipient's compromise, waiver or release...of payment for items or services included in a claim against the...primary plan's insured.  This sentence is of no help to Medicare in the instant dispute for several reasons.

First, under the terms of the Release in this case, at paragraph 1, the parties stipulated that the negligence claim-related medical bills and claim damages time frame were April 10 through 16, 2005, and that the amount of Medicare's right of recovery was $2,922.34 subject to the pro-rata reduction of procurement costs.  (AR at 2893).  For ease of reference the Release is attached as Exhibit 1.  Additionally, in the Complaint, Edith Weinstein did not make any specific claim seeking recovery of medical expenses after the April 16, 2005 second stroke.  She simply sought recoverable medical expenses. (AR at 2937-2951).  Therefore, in this case there was no "release of payment for items or services included in the claim" for services rendered after April 16, 2005, such that Medicare may rightfully claim that the claimant received a settlement and released any third party from paying for Irwin Weinstein's medical services beyond April 16, 2005.

2

Second, and equally important, this particular sentence within the statute must be interpreted in the context of the preceding sentence in the statute which limits Medicare's right of recovery to the amount of medical expenses the claimant in the underlying case was legally permitted to recover from the defendant in that case, i.e. the medical expense payment amount the primary plan has or had responsibility to make with respect to (Medicare-paid) items or services. If a Medicare recipient was injured in an auto accident caused by a careless driver, but unwittingly claimed in his Complaint that the careless driver was responsible for all medical care he received for a period of time that preceded the accident, Medicare would not be permitted to obtain reimbursement for Medicare-paid medical bills that preceded the accident simply because the claimant mistakenly claimed those damages. Medicare's right to reimbursement is limited to payments for medical treatment that is demonstrated to be necessitated by the accident. Because the Medicare recipient may not recover the cost of medical bills that preceded the accident, Medicare may not rightfully obtain reimbursement from a third party settlement for payments it made for those bills. The salient point is that the medical bills and payments must have been necessitated by the carelessness of the third party to be recoverable by Medicare.

Third, the statutory language within the sentence of the statute concerning the implication of the Release terms on the amount of the Medicare reimbursement is not mandatory; it is permissive. The statute states that a primary plan's responsibility to make payment "may be demonstrated..." if the release terms discharge payment for items or services included in the claim. The statute does <u>not</u> say that the primary plan's responsibility to make a payment "shall be demonstrated..." by release terms that discharge payment for items or services included in the claim. Medicare's right is a right of subrogation to any right of an individual or other entity to payment with respect to such item or service under a primary plan. 42 U.S.C. § 1395

y(b)(2)(B)(iv). The law of each state determines which medical bills are recoverable by the claimant in the third-party tort claim, which in turn controls the amount that must be reimbursed to Medicare.

Another controlling legal precept that Medicare denies is that when there is a dispute or disagreement between Medicare and the Medicare recipient/claimant over the amount of negligence-resulting medical expenses the Medicare recipient/claimant may recover in the underlying claim, Medicare has the burden of proving which of the medical bills it paid on behalf of the Medicare recipient/claimant were recoverable by the Medicare recipient/claimant in the Medicare recipient's underlying claim. The statute itself does not identify which party bears the burden of proof when there is a dispute between Medicare and a Medicare recipient as to the amount owing to Medicare from a third party settlement, but caselaw decisions by various federal Courts have placed the burden of proof upon Medicare.

A brief background analysis with the use of hypothetical scenarios is helpful to understand the fundamental issue presented in this case. In some third party tort claims filed by a Medicare recipient, the analysis of which Medicare paid bills were necessitated by the underlying tortious conduct of the third party tortfeasor is easily accomplished. For example, if a careless driver runs a red light hitting a pedestrian, thereby breaking the pedestrian's leg, requiring hospitalization and surgery to treat the fracture and thereafter requiring physical therapy following the hospitalization, the process of identifying the accident-related treatment and corresponding Medicare-paid medical bills is easily accomplished. However, if you consider a similar but different fact pattern, i.e. the Medicare recipient gets a fractured leg while jogging after slipping on gravel through no fault of anyone, and during the subsequent necessary hospitalization, an otherwise necessary surgery to treat the fracture is negligently performed,

then the process of identifying which medical bills are attributable to the underlying injury, i.e. the fracture, versus which medical bills are attributable to the negligently performed surgery may become difficult.  For example, if the Medicare recipient in the second hypothetical scenario would have needed physical therapy following the loose gravel slip/fall-necessitated surgery, even if the surgery had not been negligently performed, then is it proper and legal for Medicare to claim reimbursement for the amount Medicare paid for therapy services following the negligently performed surgery?  In plaintiff's view, under the second hypothetical, Medicare's right of reimbursement for post-surgery therapy services would be limited to the amount Medicare paid for any <u>additional</u> therapy the injured Medicare recipient required by reason of the negligently performed surgery.  That is, Medicare would not be entitled to recoup from the Medicare recipient's third-party settlement the amount Medicare paid for the physical therapy the recipient would have needed as a result of the non-negligently caused fracture.  The legal basis for plaintiff's view is that in the third-party tort claim against the physician who negligently performed the fracture repair surgery, the claimant would not be able to successfully claim that the negligently performed surgery necessitated the entirety of the post-surgery therapy, because the fracture itself would have required surgery and post-surgery therapy.  Unfortunately, Medicare has a penchant for demanding unsupported and overreaching reimbursements from Medicare recipients' settlements, irrespective of whether the Medicare recipient was legally permitted to obtain a financial recovery of certain medical expenses that occurred following the tortious occurrence, be it an auto accident, a slip and fall or medical professional negligence. <u>See</u>, <u>e.g.</u> <u>In re Dow Corning Corp.</u>, 250 B.R. 298 (Bankr. E.D. Mich. 2000).

　　　　The determination of the amount of Medicare's right to reimbursement becomes even more complicated when, using either hypothetical, you add the fact that the Medicare recipient

had pre-existing medical conditions such as high blood pressure and elevated cholesterol for which the Medicare recipient had been taking medications before experiencing his fractured leg. In seeking to recover reimbursement of medical expenses it paid on behalf of the recipient following the fracture, Medicare fails to provide a detailed medical bill payment statement that identifies whether the amount Medicare is seeking to recover from a Medicare recipient's third party settlement improperly includes payments Medicare paid for those very same medications the recipient would have needed even if the fracture had never occurred.  The patient would have needed those medications irrespective of the fracture and hospitalization, i.e., irrespective of any negligent act.  Consequently, the Medicare recipient legally would not be permitted to obtain from a negligent third party a financial recovery that included payment for those necessary medications the patient was receiving before the accident.  As a result, Medicare may not rightfully obtain reimbursement for those medication expenses necessitated by pre-existing medical conditions.

   With that background, this Court must now address the dispute between Edith Weinstein and Medicare over the amount Edith Weinstein must reimburse Medicare from a third party settlement she received in a medical malpractice claim.  Following the death of her husband, Irwin, Edith Weinstein filed a medical malpractice lawsuit.  Edith Weinstein claimed in the third party medical malpractice case that the defendants' unreasonable failure to administer thrombolytic medication to Irwin Weinstein on April 10, 2005 shortly after he suffered a cerebral stroke was a proximate cause of his September 4, 2005 death.  The malpractice defendants defended the malpractice claim by arguing that the decision against administering thrombolytic medication was based on sound medical judgment; and the third party defendants argued further that Mr. Weinstein suffered a second cerebral hemorrhage on April 16, 2005, which was the

actual cause of his need for ongoing medical care after that date up to his death.  The underlying

malpractice case settled for a compromised figure of $425,000.00.  The settlement figure

reflected a true compromise given the competing contentions between Edith Weinstein and the

malpractice defendants.

Well before the case settled, plaintiff's counsel notified Medicare of the claim.  See May

14, 2008 letter to MSPRC attached hereto as Exhibit 2.[1]  Medicare did not respond.  Plaintiff's

counsel thereafter forwarded MSPRC a copy of a motion to determine Medicare lien amount.

Ultimately, the Philadelphia Orphans' Court in a Court Order dated November 20, 2008

determined the recoverable Medicare lien amount to be $2,922.34, subject to a pro-rata reduction

of procurement costs and allocated the remainder of the settlement monies as between the other

recoverable damages claims under the Wrongful Death and Survival actions, and the attorney's

fees and costs.

At issue in this case is the amount of Irwin Weinstein's Medicare-paid medical bills that

can be proven by Medicare to have been necessitated by the malpractice.  Medicare's position is

that it is entitled to be reimbursed for all amounts it paid in connection with Irwin Weinstein's

medical care from April 10, 2005 to the date of his death, September 4, 2005, less a

proportionate share of the procurement costs.

There are glaring problems with Medicare's position.  First, in advancing this position,

Medicare has refused to provide a detailed medical payment breakdown so that Edith Weinstein

may assess whether Medicare has made an excessive claim by seeking to recoup for medication

---

[1] The issue of the date MSPRC was put on notice of the claim is not germane to the issues pending before the Court.
However, Medicare has mistakenly identified the date it was placed on notice of this claim, and the Medical Appeals
Council made a finding of fact concerning this issue without affording plaintiff the opportunity to address the issue.
Plaintiff believes that the MAC's factual determination was plainly incorrect and procedurally flawed.  However, the
MAC fact finding issue and the date MSPRC was put on notice of the underlying claim is not essential to a
determination of this case.

payments it made on Irwin Weinstein's behalf between April 10, 2005 and September 4, 2005 for medications Irwin Weinstein needed irrespective of his two strokes.  The MAC readily acknowledged that Irwin Weinstein had a host of pre-existing medical diagnosis that pre-dated his April 10, 2005 stroke, including hypertension, diabetes and hyperlipidemia for which he was taking multiple medications.  MAC opinion at p. 2, AR at 4.  Medicare requires refund-in-full from Edith Weinstein for all Medicare payments between April 10, 2005 and September 4, 2005, but has not provided a detailed breakdown of the medical bills it paid.  See AR at 338-344: Medicare's March 17, 2009 demand letter that provides only a total amount Medicare paid to each institution where Irwin Weinstein was situated following April 10, 2005.  Medicare's refusal to provide the detailed payment breakdown precludes Edith Weinstein, her representative and any adjudicator of this dispute to assess whether there are illegitimate reimbursement charges, including reimbursement for medication payments related to Irwin Weinstein's pre-existing medical conditions.

This example of Medicare's disposition in this matter is a symptom of a more significant flaw in Medicare's approach.  Medicare ignores the legal requirement that Medicare must prove which of the Medicare recipient's medical expenses were necessitated by the underlying tortious conduct of the third party.  It is beyond dispute that Medicare may recover only those payments it made that were necessitated by the malpractice.

When a citizen points out to Medicare that Medicare bears the burden of proving what Medicare payments were necessitated by the underlying tortious conduct, Medicare responds by denying it bears the burden of proof and attempts to distinguish the cited cases, i.e. U.S. v. Weinberg, 2002 Westlaw 32356399 (E.D. Pa. July 1, 2002) and Urso v. Thompson, 309 F.Supp. 2d 253, 259-260 (D. Conn. 2004).  For example, Medicare argues that the Urso decision

imposing the burden of proof upon Medicare does not apply because in that case Medicare, through counsel, admitted that its claim was, in part, excessive concerning certain items for which Medicare sought reimbursement. Of course, in this case, Medicare would by necessity have to agree that recovery by Medicare from the case settlement for medication payments Medicare made after April 10, 2005 concerning medications Irwin Weinstein required both before his stroke (such as high blood pressure medications and diabetes medications, etc.), and after his stroke would be inappropriate. However, Medicare has prevented the analytic scrutiny to determine if Medicare is seeking excessive reimbursements, because Medicare refused to turn over the detailed breakdown of payments it made after April 10, 2005, beyond a general statement of the payment it made to each hospital/institution. See AR at 338-344. By not providing a detailed payment breakdown, Medicare may avoid admitting it is seeking excessive reimbursement. Thus, in Medicare's view of the application of the Urso decision, it may avoid the onus of bearing the burden of proof by refusing to provide the detailed cost breakdown of the amount it seeks in reimbursement. Medicare's analysis of the Weinberg and Urso decisions is mistaken, because as the party making a claim for reimbursement, Medicare must prove every element of its case, including proving that the medical bills paid by Medicare for which it seeks reimbursement were necessitated by the underlying tortious conduct of the defendants in the civil claim.

The Weinberg and Urso decisions are not the only federal Court decisions recognizing that Medicare bears the burden of proving that the payments it made were necessitated by the underlying tortious conduct of the third party. The United States Bankruptcy Court for the Eastern District of Michigan in In re Dow Corning Corp., 250 B.R. 298 (Bankr. E.D. Mich. 2000) wrote an expansive and thoughtful analysis of the pertinent issues involved here, affirming

the burden of proof placed upon Medicare when Medicare seeks reimbursement under the

Medicare Secondary Payer Act.

It is astonishing that Medicare adopts a non-negotiable full-repayment position in

difficult causation cases, given the fact that it bears the burden of proving which of Medicare's

payments were necessitated by the underlying tortious behavior. In this case, the MAC conceded

that it would be "difficult if not impossible" (AR at 17) to prove whether the first stroke of April

10, 2005 or the second stroke of April 16, 2005, or other causes necessitated Irwin Weinstein's

care and Medicare payments following his April 16, 2005 stroke. Medicare further concedes the

medical and scientific uncertainty of apportioning the cause of Irwin Weinstein's medical bills

following the April 16, 2005 stroke as between those treatments and bills necessitated by the first

stroke and those necessitated by the second stroke (AR at 21). Having acknowledged its

inability to prove a causal connection between the claimed malpractice, i.e. the failure to

administer thrombolytics on April 10, 2005, and the medical care provided following Irwin

Weinstein's second documented stroke on April 16, 2005 stroke, the MAC has effectively

admitted that Medicare has not met its burden of proof and is unable to meet its burden of proof

to obtain reimbursement for Irwin Weinstein's Medicare-paid expenses following April 16, 2005.

Certainly, if this Court agrees with the cited cases that Medicare bears the burden of proof

demonstrating what medical bills and payments were necessitated by the malpractice, then the

MAC finding seals Medicare's fateful loss in this matter because the MAC readily concedes an

inability to prove that any of the post April 16, 2005 medical treatment and expenses are the

result of the first stroke versus the second stroke. Despite the caselaw and the MAC finding,

Medicare steadfastly refuses an amicable resolution and demands full repayment.

Even beyond the concession by MAC that the post April 16, 2005 medical expenses can not be proven to be necessitated by any cause, in this case the Medicare recipient's estate obtained an "on the merits" adjudication from the Philadelphia Orphans' Court identifying the amount owing to Medicare and allocating the balance of the recovery to other compensable elements of damage under the Wrongful Death and Survival Action. The Medicare Secondary Payment Manual at Chapter 7, 50.4.4 requires Medicare to honor such "on the merits" decisions.[2] Unhappy with the November 20, 2008 Court Order, Medicare asserts that the state Court Order is not "on the merits." Medicare's argument is devoid of merit. By legal definition an adjudication "on the merits" is a decision by the adjudicator of the substance of the issue presented, but does not include a decision based upon procedural or technical grounds. Greene v. Palakovich, 606 F.3d 85, 98 (3d Cir. 2010) aff'd sub nom. Greene v. Fisher, 132 S. Ct. 38 (2011). Medicare attempts to avoid the consequences of the Medicare Secondary Payer Manual by arguing at length about what evidence the Orphans' Court did or did not have in rendering its decision. However, the Medicare Secondary Payers Manual ("MSPM"), Chapter 7, 50.4.4 (2008), does not identify what type of deliberative process is required or what evidence must be submitted to the adjudicator for an "on the merits" decision to be binding upon Medicare. The plain language of the MSPM requires only an "on the merits" decision. Indeed the MSPM does not require any particular procedure or evidence or proof to be submitted to the adjudicator. Nor does the MSPM identify, limit or exclude any particular Court or judge who may make an "on the merits" adjudication. The MSPM provision at Chapter 7, 50.4.4 requires only an "on the merits" decision, which is precisely what exists in the November 20, 2008 Court Order. The November 20, 2008 Court Order fully satisfies the requirements of the MSPM. Although

---

[2] Courts have recognized that Medicare periodically issues manuals which assist in the interpretation and administration of the reimbursement system and regulations. Deference should be accorded to the manuals. Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 376-77 (3d Cir. 2009).

Medicare is displeased by the Philadelphia Orphans' Court November 20, 2008 decision, that decision undoubtedly and by definition is an "on the merits" adjudication that conforms fully to the MSPM, as the state Court specifically allocated the amount Medicare is owed and the amounts not related to medical services under the Wrongful Death and Survival Actions. Medicare is obligated to abide by its Secondary Payer Manual. The "plain language" of the Medicare Secondary Payer Manual "precludes the Secretary's interpretation." See, e.g., UPMC-Braddock Hospital v. Sebelius, 592 F.3d 427, 437 (3d Cir. 2010).

Despite acknowledging that medical and scientific uncertainty make it impossible to determine whether the first stroke, second stroke or other causes necessitated Irwin Weinstein's medical care and Medicare payments after the April 16, 2005 second stroke, the MAC without medical professional expert support has attempted to provide its own non-expert interpretation of Irwin Weinstein's condition and the hospital record between April 10, 2005 and April 16, 2005. The law requires that malpractice claims, including standard of care violations and causal harm claims, be based upon appropriate expert support to establish a prima facie case. See, e.g. Jones v. Montefiore Hospital, 494 Pa. 410, 431 A. 2d 920 (1981) and Billman v. Saylor, 761 A. 2d 1208 (Pa. Super 2000). Surely Medicare is aware of the need for competent evidence to substantiate whether the underlying negligent conduct was a proximate cause of subsequent medical care. For example, in the Weinberg case, when Medicare attempted to prove that a Medicare recipient's stroke, and the necessary medical care and treatment for a stroke was caused by an auto accident, Medicare obtained and provided experts to support its claim. See U.S. v. Weinberg, 2002 Westlaw 32356399 at *6 (E.D. Pa. July 1, 2002). In this case, despite the need for a competent expert, such as a neurologist, to establish the causal relationship between the alleged April 10, 2005 tortious conduct and Irwin Weinstein's treatment following the April 16,

2005 second stroke, Medicare failed to provide that competent expert testimony or any medical expert opinion letter.  Therefore, as a matter of law, because there is not substantial competent evidence to support the MAC decision, this Court must deny Medicare's motion for summary judgment.

This Court should deny Medicare's motion for summary judgment and instead grant plaintiff's motion because, first, Medicare is obligated to honor the "on the merits" decision of the Philadelphia Orphan's Court allocating the Medicare recoverable medical expenses from other compensable damages recovery; and, second, because Medicare failed to meet its burden of proof to substantiate its claim; and, third, because there is not substantial evidence to support MAC's decision in this matter.

**LAW OFFICE OF JAMES I. DEVINE**

Date: ___10/2/12___     By:   s/James I. Devine
                              JAMES I. DEVINE, ESQUIRE
                              Attorney for Plaintiffs
                              509 Swede Street, Norristown, PA 19401
                              Telephone: (610) 292-9300
                              Attorney I.D. No. 39270

# EXHIBIT 1

## FULL AND FINAL RELEASE

1.    **FOR AND IN CONSIDERATION** of the sum of $425,000.00, to be paid to the
undersigned, the undersigned does fully release and discharge Matthew Christianson,
M.D., Kathleen Hayward, M.D., Mountain Laurel Risk Retention Group, Albert
Einstein Medical Center, Einstein Hospital at Elkins Park, any and all of their staff,
nurses, physicians and residents, whether named in the below referenced lawsuit or
not, and all other persons, governmental entities, associations and corporations whether
or not named herein, their heirs, executors, administrators, attorneys, successors,
assigns and insurers, and their respective agents, servants and employees (hereafter
referred to collectively as "Releasees"), from any or all causes of action, claims and
demands of whatsoever kind on account of all known and unknown injuries, losses and
damages allegedly sustained by the undersigned and, specifically, from any claims or
joinders for sole liability, contribution, indemnity or otherwise as a result of, arising
from, or in any way connected with all medical professional health care services
rendered by the Releasees, and on account of which Legal Action was instituted by the
undersigned in the Philadelphia Court of Common Pleas, April Term, 2007, No. 0623.
All sums set forth herein constitute damages on account of physical injuries and
sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of
1986, as amended. The undersigned does understand, and agrees, that the acceptance
of said sum is in full accord and satisfaction of a disputed claim and that the payment of
said sum is not an admission of liability by any party named herein. This settlement
and Release agreement are conditioned and contingent upon the Court entering an
Order limiting Medicare's right of recovery to $2,922.34, subject to the pro-rata
reduction for attorney's fees and costs, representing Medicare's payments for Irwin
Weinstein's stroke related care for the time frame of April 10, 2005 through April 16,
2005 and the Court entering an Order limiting the right of any other insurer/third party
payer to the time frame of April 10, 2005 through April 16, 2005 inclusive.

2.    It is expressly understood and agreed that this release and settlement is intended to

cover and does cover not only all now known injuries, losses and damages, but any
further injuries, losses and damages which arise from, or are related to, the occurrence
set forth in the Legal Action noted above.

3.     The undersigned hereby agrees, on her behalf and on behalf of her heirs, executors,
successors and/or assigns, and on behalf of her husband's estate, to satisfy any and all
valid liens that have been asserted and/or which could be or may be asserted for
reimbursement of any medical benefits or other benefits provided to the undersigned by
a third party as a result of the injuries claimed in the Legal Action referenced herein.
Additionally, the undersigned hereby agrees, on her behalf and on behalf of her heirs,
executors, successors and/or assigns, to indemnify and save forever harmless the
Releasees named in this document from and against any and all claims, demands or
actions, known or unknown, made against the Releasees by any person or entity on
account of, or in any manner related to or arising from the Legal Action noted above.

4.     In the event that court approval is required for the settlement, compromise or resolution
of this claim, this settlement is conditioned upon the undersigned promptly undertaking
any and all necessary action to obtain same. It is further understood and agreed that if
Court approval is required for any aspect of the settlement of this claim that,
notwithstanding the provisions of Pa.R.C.P. 229, the Releasees shall not be obligated to
pay the settlement funds for a period of twenty (20) days from receipt of this executed
Release or Court Order approving settlement, whichever is later, and, as further
condition and agreement upon which this settlement is based, the undersigned agrees to
waive any and all provisions of Pa.R.C.P. 229.1 with respect to entitlement of interest.

5.     If this settlement is ever determined by any court to be without effect because some
necessary court approval was not obtained, or if the released parties are subjected to
further legal action or claim which could not have been instituted or presented had
proper court approval been obtained by the undersigned, then the undersigned will
indemnify the released parties for any future loss, cost, or expense, including but not

02894

limited to, reasonable attorney's fees for defending, litigating and settling any such claims or action, and for any judgment resulting from any such claim or action.

6. It is further understood and agreed that this is the complete release agreement, and that there are no written or oral understandings or agreements, directly or indirectly, connected with this release and settlement, that are not incorporated herein. This agreement shall be binding upon and inure to the successors, assigns, heirs, executors, administrators, and legal representatives of the respective parties hereto.

7. It is further understood and agreed and made part hereof, that the undersigned, her family and representatives and her attorney shall not comment, either directly or indirectly, on any aspect of this case or settlement to any member of the news media, or in any way publicize or cause to be publicized in any news or communications media, including but not limited to newspapers, magazines, journals, radio, television, on-line computer systems and law-related publications, the facts of this case, the existence of this settlement and the terms and conditions of this settlement. If the undersigned, her family, representatives and/or attorney(s) file any court document(s) identifying the terms and/or conditions of this settlement, they shall request that the court immediately seal such document(s) and take whatever reasonable steps necessary to seek to assure that such document(s) are not accessible or disclosed to anyone. This paragraph is intended to become part of the consideration for settlement of this claim.

8. It is further understood and agreed that the Releasees, as well as any individual healthcare provider or healthcare institution that is related to the Albert Einstein Healthcare System, will NOT attempt to collect from the undersigned any outstanding bills or debt that may remain outstanding relating to the medical care and services rendered to the deceased, Irwin Weinstein, from April 10, 2005 until the time of his death.

9. THE UNDERSIGNED HEREBY DECLARES that the terms of this settlement have

been completely read; and that she has discussed the terms of this settlement with legal counsel of her choice; and said terms are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims on account of the injuries and damages above-mentioned, and for the express purpose of precluding forever any further or additional suits arising out of the aforesaid claims.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _22_ day of _Sept._ 2008.

_Edith Weinstein_ (SEAL)
Edith Weinstein, Executrix of the Estate of
Irwin Weinstein, deceased

_172 - 42 - 6025_
SOCIAL SECURITY NUMBER
_7728 Union Ave_
ADDRESS
_Elkins Park Pa. 19027_

SWORN to and subscribed before me this
_22nd_ Day of _September_ 2008.

_____
NOTARY PUBLIC Joseph Sheman

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JOSEPH SHEMAR, Notary Public
East Norriton Twp., Montgomery County
My Commission Expires March 8, 2010

EXHIBIT 2

LAW OFFICES

# JAMES I. DEVINE

509 SWEDE STREET

NORRISTOWN, PENNSYLVANIA 19401

————

(610) 292-9300

FAX (610) 270-0503

May 14, 2008

Medicare
P.O. Box 33829
Detroit, MI 48232
Attn: MSPRC

      Re:    Irwin Weinstein
             D.O.B.: 03/15/1936
             S.S. No.: 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
             Medicare No.: 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A

Dear Sir or Madam:

     I represent the estate of Irwin Weinstein, date of birth March 15, 1936, social security number 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, in a Wrongful Death/Survival Action claim against Albert Einstein Medical Center, Elkins Park Hospital Einstein at Elkins Park, Kathleen Ann Hayward, M.D. and Matthew Christianson, M.D. A lawsuit was initiated by Summons filed on April 9, 2007 and a Complaint was filed on June 27, 2007, copy of the time-stamped Complaint is enclosed. Dresher Hill Health and Rehabilitation Center was dismissed from the case and no action is being pursued against Dresher Hill Health and Rehabilitation Center.

     In summary, on April 10, 2005, Mr. Irwin Weinstein presented to Elkins Park Hospital Emergency Department with symptoms of slurred speech, right-sided facial motional deficits and inability to stand or walk. Dr. Hayward evaluated Mr. Weinstein and determined that he had suffered a stroke. Dr. Hayward informed Mr. Weinstein and his family that Mr. Weinstein was a candidate for thrombolytic therapy and recommended that Mr. Weinstein be transported to Albert Einstein Medical Center in Philadelphia, Pennsylvania, where a stroke team would be waiting to administer thrombolytic therapy Mr. Weinstein. However, when Mr. Weinstein arrived at Albert Einstein Medical Center, there was no stroke team waiting for Mr. Weinstein and the thrombolytic therapy was ultimately never administered. The hospital claims that Mr. Weinstein was no longer a candidate for thrombolytic therapy and asserts that his condition had improved. Mr. Weinstein was hospitalized thereafter and treated for the stroke.

Please let me know the asserted Medicare lien.  Thank you for your attention to this matter.

Very truly yours,

JAMES I. DEVINE

JID/egm
Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH WEINSTEIN, Executrix of the : 
Estate of Irwin Weinstein, deceased :   CIVIL ACTION No.: 12-154
                                  :
                                  :
        v.                         :
                                  :
KATHLEEN SEBELIUS, SECRETARY : 
OF THE UNITED STATES : 
DEPARTMENT OF HEALTH AND : 
HUMAN SERVICES : 

## CERTIFICATE OF SERVICE

    I, James I. Devine, Esquire, attorney for plaintiff, hereby certify that a true and

correct copy of Plaintiff's Response to Defendant's Motion for Summary Judgment was

served upon Virginia R. Powel, Esquire, and Noreen C. O'Grady, Esquire via email on

this date:

Virginia R. Powel, Esquire
U.S. Attorney's Office
615 Chestnut St.
Suite 1250 Philadelphia, PA 19106-4476
virginia.powel@usdoj.gov

Noreen C. O'Grady
Assistant Regional Counsel
Office of the General Counsel, Region III
Department of Health and Human Services
Suite 418, The Public Ledger Building
150 S. Independence Mall W.
Philadelphia, PA 19106-3499
Noreen.OGrady@hhs.gov

**LAW OFFICE OF JAMES I. DEVINE**

Date: 10/2/12           By:   *James I. Devine*
                            JAMES I. DEVINE, ESQUIRE
                            Attorney for Plaintiff